IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN TURNER, M.D., SUSANA TURNER, on behalf of themselves and as Guardian ad Litem for minor children DAVID TURNER, DANIEL TURNER, DEBORAH TURNER; and WESTERN PARAMEDICAL SERVICES LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>DAVID J. COOK, ESQ.; COOK, PERKISS & LEW, a professional law corporation; AH BENG YEO; E.A. MARTINI; and DOES 1 THROUGH X AND EACH OF THEM INCLUSIVE,<br><br>    Defendants.<br>_____/ | No. C 01-3884 CW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

    Defendants move to dismiss Plaintiffs' five causes of action for failure to state a claim on which relief can be granted. Plaintiffs oppose the motion.  The matter was heard on March 15, 2002.  Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS

the motion (Docket #25).

BACKGROUND

On August 21, 1998 Defendants Yeo and Martini obtained a judgment against Plaintiff Stephen Turner in excess of $1,000,000. Complaint, Ex. A. The judgment resulted from a jury verdict after trial in which Plaintiff Stephen Turner was found to have committed "various business interference torts" against Defendants Yeo and Martini. Complaint ¶ 12. Defendants Yeo and Martini hired Defendant Cook and his law firm Cook, Perkiss & Lew to assist in collection of the judgment. Plaintiffs allege that the means used by Defendants to collect on the judgment violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq.,[1] the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 et. seq. Plaintiffs also allege that Defendants' collection activities were undertaken with the intent to inflict emotional distress, and constituted an invasion of privacy.[2]

The alleged conduct that forms the basis of these claims is as follows.

On October 29, 1999, Defendants Yeo and Martini, represented by Defendant Cook, Perkiss & Lew, filed a complaint

---

[1] Plaintiff Western Paramedical Services, LLC does not join in this cause of action. Complaint ¶ 17.

[2] The cause of action for invasion of privacy is only alleged against Defendants Cook and Cook, Perkiss, & Lew. Complaint ¶ 62.

2

1 against Plaintiff Stephen Turner alleging that Turner had
2 fraudulently conveyed his real and personal property with the
3 intent to prevent Yeo and Martini from collecting the money owed
4 on the prior judgment.  Complaint, Ex. I.

5     In their complaint, Yeo and Martini alleged that Plaintiff
6 Stephen Turner previously had been convicted of harassing Yeo
7 and Martini in violation of California Penal Code § 415.  Id. at
8 3. Although the complaint sought to set aside the conveyance of
9 a property located in Alameda, California, the complaint was
10 filed in the Superior Court of California, County of Contra
11 Costa.
12 Id. at 1.

13     Plaintiffs allege that Defendants' court filings in the
14 Contra Costa fraudulent conveyance action contained "false,
15 deceptive and improper statements."  Specifically, Plaintiff
16 Stephen Turner objects to references to his prior misdemeanor
17 criminal conviction and objects to a disparaging
18 characterization of his family trust suggesting it was created
19 to assist him to hide his assets.  Complaint ¶ 41.

20     Plaintiffs allege that, in addition to filing the
21 fraudulent conveyance action, Defendants sent out hundreds of
22 letters informing third parties that Defendants Yeo and Martini
23 obtained a judgment and an order of assignment against Plaintiff
24 Stephen Turner.  Complaint, Ex. B.  The letters stated that "any
25 monies which you may owe to Dr. Turner, or any designee,
26 nominee, or other named entity, now constitute the property of
27 [Yeo and Martini]."  Id.  Plaintiffs allege that these letters
28

3

falsely stated that the assignment order applied to Western Paramedical Services (WPS) when, in fact, the judgment against Plaintiff Stephen Turner may not be recouped from Plaintiff WPS. Complaint ¶¶ 24, 27. Plaintiffs allege that Defendants made these same false representations in telephone conversations with third parties who do business with Plaintiff Stephen Turner and/or Plaintiff WPS. Id. ¶ 31.

Plaintiffs also allege that Defendants engaged in other conduct to "harass, oppress or abuse" them. This conduct included: serving excessive copies of court papers on Plaintiffs, Complaint ¶ 38; improperly serving Plaintiffs with documents intended for other parties, Complaint ¶ 39; making false statements in an August, 2001 court filing regarding the sale of Plaintiffs' residence, Complaint ¶ 43; stating to Plaintiff Stephen Turner, "You dirty Jew, I'll take everything away from you." Complaint ¶ 37.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Fidelity Fin. Corp. v. Fed. Home Loan Bank of S.F., 792 F.2d 1432, 1435 (9th Cir. 1986), cert. denied, 479 U.S. 1064 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is

4

generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), cert. denied, 484 U.S. 944 (1987).

Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. See id. at 296-97.

DISCUSSION

A. FDCPA, 15 U.S.C. § 1692

Plaintiffs contend that Defendants' efforts to collect the judgment owed by Plaintiff Stephen Turner exceeded the

5

1 limitations imposed by the FDCPA.  They allege that Defendants
2 made "false deceptive or misleading representations" and used
3 "unfair or unconscionable means to collect or attempt to collect
4 any debt" in violation of 15 U.S.C. §§ 1692e, 1692f.  Complaint
5 ¶¶ 32, 35.

6 The prohibitions of sections 1692e and 1692f do not apply
7 to all collection procedures.  Rather, the FDCPA regulates the
8 collection of a specific type of debt defined in the statute.
9 The FDCPA defines a "debt" as "any obligation or alleged
10 obligation of a consumer to pay money arising out of a
11 transaction in which the money, property, insurance, or services
12 which are the subject of the transaction are primarily for
13 personal, family or household purposes . . . ."  15 U.S.C. §
14 1692a(5).  As an initial matter, therefore, the Court must
15 determine whether Plaintiff Stephen Turner's obligation to
16 Defendants is a "debt" within the meaning of the statute.  If
17 not, the prohibitions of the FDCPA do not apply to this action.
18 Slenk v. Transworld Systems, Inc., 236 F.3d 1072, 1075 (9th Cir.
19 2001) (threshold question in suit under FDCPA is whether the
20 dispute involves a "consumer debt as that phrase is defined by
21 the FDCPA").

22 In order to qualify as a debt within the meaning of the
23 statute, the obligation must arise "out of a transaction" and
24 the obligation must be incurred "primarily for personal, family,
25 or household purposes."  Plaintiffs concede that the tort
26 judgment entered against Plaintiff Stephen Turner is not a
27 "debt" within the meaning of the act.  See Hawthorne v. Mac

1  Adjustment, Inc., 140 F.3d 1367 (11th Cir. 1998) (obligation
2  arising from tort is not a transaction and tortfeasor is not a
3  consumer within the meaning of the FDCPA).

4      Plaintiffs argue, however, that the action to set aside the
5  fraudulent conveyance of Stephen Turner's property falls within
6  the FDCPA because it is an action to recover a personal
7  residence.  This fact does not convert Defendants' efforts to
8  collect a tort judgment into an effort to collect a consumer
9  debt.  There is but one "debt" at issue here: a judgment in
10 excess of $1,000,000 owed by Plaintiff Stephen Turner to
11 Defendants Yeo and Martini.  Defendants' actions were an effort
12 to effectuate that judgment.  The judgment, as noted, is not a
13 consumer debt such that the proscriptions of the FDCPA would
14 apply.

15     Because the FDCPA does not apply to actions taken to
16 collect a tort judgment and because no additional allegations
17 can convert the tort judgment at issue here into a consumer debt
18 to which the FDCPA would apply, Plaintiffs' first claim for
19 relief for violations of the Fair Debt Collection Practices Act
20 is dismissed without leave to amend.

21     B.  RICO, 18 U.S.C. § 1961

22     To state a claim under RICO, Plaintiffs must allege a "pattern
23 racketeering activity."  18 U.S.C. § 1961.  A "pattern or racketee
24 activity" is a term of art meaning at least two acts of racketeeri

7

activity (predicate acts) within ten years of each other.³ <u>Id.</u> at § 1961(5). The plaintiff must allege that these predicate acts related (relatedness requirement), "<u>and</u> that they amount to or pos[e a] threat of continued criminal activity" (continuity requirement). [H.J.] <u>Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989) (emph[asis] in original).

A plaintiff may satisfy the continuity requirement by alleging either "closed-ended" or "open-ended" continuity. Closed-ended continuity involves "a series of related predicates extending over [a] substantial period of time." <u>H.J.</u>, 492 U.S. at 242; see also <u>Reli[gious] Technology Center v. Wollersheim</u>, 971 F.2d 364, 366-67 (9th Cir. 1[992]). Open-ended continuity involves "a specific threat of repetition extending indefinitely into the future," or predicate acts that "a[re] part of an ongoing entity's regular way of doing business." <u>H.J.</u>, [492] U.S. at 242; <u>Ticor Title Ins. Co. v. Florida</u>, 937 F.2d 447, 450 (9th Cir. 1991).

Where the predicate acts were designed to bring about a singl[e] event or injury to a single plaintiff, continuity is not sufficien[tly] plead. <u>See, e.g.</u>, <u>Medallion Television Enterprises, Inc. v. Selec[t] California, Inc.</u>, 833 F.2d 1360 (9th Cir. 1987), <u>cert. denied</u>, 492 [U.S.] 917 (1989) (two predicate acts aimed at fraudulent inducement to e[nter] a contract); <u>Religious Technology Center v. Wollersheim</u>, 971 F.2d

---

³RICO defines racketeering activity as "any act or threat involving" specified State law crimes, any "act" indictable under various specified federal statutes, and certain federal "offenses" ("predicate acts"). 18 U.S.C. § 1961(1). Predicate acts include, inter alia, mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C.
§ 1343, and "any offense involving . . . fraud in the sale of securities . . . " 18 U.S.C. § 1961 (1)(B) & (D).

8

1  (9th Cir. 1992) (only goal of defendants was successful prosecutio
2  their State lawsuit); Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9
3  Cir. 1992) (defendants' acts served single purpose of impoverishin
4  plaintiff).

5  　　　In Sever, the plaintiff brought suit against his former emplo
6  alleging that the defendants had fired him, blacklisted him, and
7  induced a subsequent employer to fire him after he wrote articles
8  criticizing the defendants and testified before Congress to their
9  economic detriment.  The plaintiff's RICO claim alleged that the
10 defendants engaged in a pattern of racketeering activity that dama
11 his ability to obtain employment.  The lower court dismissed the
12 plaintiff's fourth amended complaint for failure to state a claim
13 RICO, on grounds, inter alia, that he had failed to allege a patte
14 racketeering.  978 F.2d at 1533.  The Ninth Circuit affirmed, hold
15 that the allegations did not satisfy the continuity requirement se
16 in H.J.  The Ninth Circuit specifically noted that there was no
17 suggestion that the defendants would have harmed any other
18 Congressional witnesses or that the alleged practices had become a
19 regular way of conducting business.  Id.

20 　　　Similarly, in this case, Plaintiffs allege that "the many let
21 and follow up telephone calls and faxes, constitute a pattern of
22 racketeering conduct."  Complaint ¶ 56.  However, the sole alleged
23 purpose of this conduct is to redirect to Defendants sums owed to
24 Plaintiff WPS in order to collect the outstanding judgment owed by
25 Plaintiff Stephen Turner.  Id. ¶ 52.  There is no allegation of a
26 continuing threat of unlawful activity once that judgment is colle
27 See Religious Technology Center, 971 F.2d at 366 (because the goa
28

9

allegedly fraudulent activity was prosecution of State court tort
"there was no threat of activity continuing beyond the conclusion
that suit"); Medallion Television Enter., 833 F.2d at 1364 (where
was a joint venture to obtain broadcast rights, once the rights we
obtained the threat ended).

In fact, just the opposite is alleged. Plaintiffs specifical
note that the activity complained of was solely directed towards
collecting the judgment owed by Plaintiff Stephen Turner. See
Complaint ¶ 57 (alleged racketeering activities were "motivated by
desire to collect on a judgment against Stephen Turner in favor of
and Martini"). Consequently, the "continuity requirement" necessa
state a claim under RICO is not satisfied.[4]

---

[4] In addition, for separate reasons, Plaintiffs have not stated a claim against Defendant Cook, Perkiss, & Lew under RICO. "For the purposes of section 1962, RICO plaintiffs must allege a defendant--the "person" or "persons"--who is distinct from the "enterprise" whose business the defendant is conducting." Sever, 978 F.2d at 1533. Plaintiffs specifically plead that Defendant Cook, Perkiss, & Lew is the "enterprise that carried on these predicate acts." Complaint ¶ 57. Because one entity cannot be both the corrupt enterprise and the persons conducting that enterprise, the RICO claim against Defendant Cook, Perkiss & Lew must be dismissed.

Moreover, Plaintiffs Stephen Turner, Susanna Turner, and their minor children have no standing to pursue a RICO claim against Defendants. Title 18 U.S.C. § 1964 confers standing on "any person injured in his business or property" by reason of a RICO violation. According to the complaint, the allegedly fraudulent acts resulted in the misdirection to Defendants of monies owed to Plaintiff WPS. Plaintiff Stephen Turner declares that his only connection to Plaintiff WPS is as an employee and former independent contractor. Declaration of Stephen Turner ¶ 6. Plaintiff Susanna Turner declares that she is a manager for Plaintiff WPS. Declaration of Susanna Turner ¶ 1. Plaintiffs contend that they have suffered a cognizable injury because "had these funds been paid over to Western Paramedical Services, LLC, they would have become available to pay wages and salaries over to Plaintiffs." Complaint ¶ 58. This speculative, indirect
(continued...)

10

Because Plaintiffs have not alleged conduct that satisfies the continuity requirement for a RICO claim, that claim is dismissed with leave to amend. If Plaintiffs choose to file an Amended Complaint alleging a RICO violation, Plaintiffs, concurrent with their Amended Complaint, are ordered to file a RICO case statement in the format provided in the attached Order.

C. State Law Claims

Plaintiffs also bring three causes of action pursuant to State law. Title 28 U.S.C. § 1367(a) gives this Court supplemental jurisdiction over such claims. Defendants contend that the conduct that forms the basis of Plaintiffs' complaint is privileged pursuant to California Civil Code § 47(b)(2) (litigation privilege) and, therefore, cannot form the basis of liability for either the common law or the statutory causes of action alleged.

In O'Keefe v. Kompa, 100 Cal. Rptr. 2d 602 (Ct. App. 2000), the California Court of Appeal applied the litigation privilege in a situation analogous to the one now before the Court. In that case, the plaintiff had lost a prior suit against defendants and been ordered to pay the defendants attorneys' fees. In an effort to collect the attorneys' fees, the defendants filed a levy on the plaintiff's bank account and engaged in other collection activities. The plaintiff then sued

---

[4](...continued)
injury is not cognizable as a RICO injury.

11

the defendants based on these collection efforts.

The court applied a four part test to see if the conduct at issue was subject to the litigation privilege. "To be privileged a statement must (1) be made in a judicial proceeding, (2) by litigants or other authorized participants, (3) aim to achieve the litigation's objects, and (4) have some logical connection or relation to the proceeding." Id. at 604-05 (citing Silberg v. Anderson, 266 Cal. Rptr. 638 (1990)). "Further, [the litigation privilege] applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." Silberg, 266 Cal. Rptr. at 642 (citations omitted). In O'Keefe, the court concluded that section 47(b)(2) applied to the defendants' collection activities and dismissed the complaint.

Plaintiffs here raise three arguments as to why the conduct and statements of Defendants do not fall within the litigation privilege. First, Plaintiffs argue that the statements included by Defendants in letters to third parties were knowingly false. Plaintiffs contend that the making of knowingly false representations in this context amounts to obstruction of justice and attorney deceit and that such conduct is not subject to the litigation privilege. In support of this proposition, Plaintiffs rely on Carney v. Rotkin, Schmerin & McIntyre, 206

12

Cal. App. 3d 1513 (1988).[5] In that case, the court held that an attorney's false statement to an opposing party that a bench warrant had been issued for her arrest was not privileged because the statement as alleged was proscribed by the Code of Professional Conduct. The court concluded that this unethical conduct was not intended to achieve the litigation's objectives and therefore did not satisfy the third criteria for a privileged statement. Id. at 1520.

However, subsequent to the California Court of Appeals decision in Carney, the California Supreme Court decided Silberg, supra. In Silberg, the court reaffirmed that the litigation privilege should be construed broadly to protect statements associated with an ongoing judicial proceeding. The court specifically noted that attorney liability for fraudulent communications, perjured testimony, and abuse of process were all precluded by the litigation privilege. 266 Cal. Rptr. at 646; O'Keefe, 100 Cal. Rptr. 2d at 604-05. Each of these torts requires allegations of unethical or criminal conduct, yet the court found that such allegations were not a bar to satisfaction of the four part test noted above. Therefore, the litigation privilege applies equally to malicious or fraudulent conduct and statements. Plaintiffs' argument that the litigation privilege does not apply where unethical conduct is alleged is therefore

---

[5] Plaintiffs also rely on Kinnamon v. Staitman & Snyder, 66 Cal. App. 3d 893 (1977) and Barbary Coast Furniture v. Sjolie, 167 Cal. App. 3d 319 (1985). Both of these cases were explicitly overruled by the California Supreme Court. See Silberg, 266 Cal. Rptr. at 646.

13

contrary to controlling authority from the California Supreme Court and must be rejected.

Plaintiffs next argue that statements to third parties not involved in the litigation are not privileged. Plaintiffs rely on Susan A. v. County of Sonoma, 3 Cal. Rptr. 2d 27 (Ct. App. 1991) for this proposition. The Susan A. court held that statements to the press were not privileged because the communications were made "to persons in no way connected with the proceeding." 3 Cal. Rptr. at 31. In O'Keefe, by contrast, the court held that levying on a bank account was "clearly privileged" because that effort was "an extension of [the] judicial process." 100 Cal. Rptr. 2d at 605. In this case, the letters sent to third parties notifying them of the order of assignment against Stephen Turner were privileged because those letters were an attempt to enforce a prior judgment and, therefore, an extension of that process. "We conclude that defendants' actions were logically and legally related to the realization of a litigation objective--that is, collection of a judgment." Id.

Lastly, Plaintiffs argue that Defendants acted outside the litigation privilege when they attached a police report involving Plaintiff Stephen Turner to their fraudulent conveyance complaint. Plaintiffs rely on Ngyen v. Proton Technology Corp., 81 Cal. Rptr. 2d 392 (Ct. App. 1999), where the California Court of Appeal held that a demand letter's reference to appellant's criminal record was outside the litigation privilege. In Ngyen, the court noted that the

14

connection between appellant's criminal record and the substance of the instant litigation was "to be charitable about it, tenuous." 81 Cal. Rptr. 2d at 398. Here, however, Plaintiff Stephen Turner's criminal record is directly related to the action which resulted in the judgment against him and, consequently, relevant to the attempts to collect the judgment through the fraudulent conveyance action.

The parties have a long and contentious history. Defendants contend that in 1995, prior to the civil litigation that resulted in the $1,000,000 judgment, Plaintiff Stephen Turner harassed Defendants Yeo and Martini and that this harassment led to criminal proceedings against Dr. Turner. In their fraudulent conveyance complaint, Defendants included this fact to show the length and severity of the enmity between the parties, and Dr. Turner's motivation to hide his assets. The police report "had some logical connection to the proceeding" and is therefore privileged. O'Keefe, 100 Cal. Rptr. 2d at 605.

Because the conduct at issue is privileged, Defendants cannot be held liable on any of Plaintiffs' State law claims, including their third claim for relief for unfair business practices. See Cal. Bus. & Prof. Code § 17200; Rubin v. Green, 847 P.2d 1044, 1053 (Cal. 1993) ("To permit the same communicative acts [that are immune from civil tort liability pursuant to section 47(b)] to be the subject of an injunctive relief proceeding brought by this same plaintiff under the unfair competition statute undermines that immunity.").

The statement alleged to have been made by Defendant Cook

15

to Plaintiff Stephen Turner ("you dirty jew, I'll take everything away from you") is not privileged. However, this statement is not relevant to either the invasion of privacy or the unfair competition claims, which are based on other alleged conduct. The statement, alone, is not sufficient to state a claim for intentional infliction of emotional distress. To state such a claim, the conduct at issue "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." Trerice v. Blue Cross of California, 257 Cal. Rptr. 338, 340 (Cal. 1989).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED (Docket #25). The debt in question here is not subject to the FDCPA, Plaintiffs have failed to plead predicate acts that may form the basis of a RICO cause of action, and Defendants are immune from liability on Plaintiffs' State law causes of action pursuant to California Civil Code § 47(b)(2).

The Court grants Plaintiffs leave to file an amended complaint in which, consistent with the requirements of Rule 11, they may state a RICO claim, alleging conduct by Defendants that satisfies RICO's continuity requirement.[6] If Plaintiffs file an amended complaint alleging a RICO claim, they must also file a

---

[6] Plaintiffs object to Defendants' request for judicial notice of the judgment of the California Superior Court in The Travelers Ins. Co. v. Ah Beng Yeo and E.A. Martini, Western Paramedical Services, LLC., No. C00-04505. In granting Defendants' motion to dismiss, the Court did not rely on this document. Therefore, Plaintiffs' objection is denied as moot (Docket #33).

16

1 RICO statement, as described in the Order Requiring Filing of
2 Rico Statement filed today.
3     They may also re-allege their supplemental State law
4 claims, if they can do so without alleging conduct that is
5 subject to the litigation privilege.  The amended complaint must
6 be filed within thirty days of the date of this order.  If it is
7 not, this case will be dismissed without prejudice to refiling
8 the State claims in State court.

11 Dated: 3/22/02                    s/CLAUDIA WILKEN
                                     CLAUDIA WILKEN
12                                   United States District Judge

17