1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   STEPHEN TURNER, M.D., SUSANA TURNER,          No. C 01-3884 CW
     on behalf of themselves and as
13   Guardian ad Litem for minor children
     DAVID TURNER, DANIEL TURNER, DEBORAH
14   TURNER; and WESTERN PARAMEDICAL               ORDER GRANTING
     SERVICES LLC,                                 DEFENDANTS'
15                                                 MOTION TO DISMISS
              Plaintiffs,
16
         v.
17
     DAVID J. COOK, ESQ.; COOK, PERKISS &
18   LEW, a professional law corporation;
     AH BENG YEO; E.A. MARTINI; and DOES 1
19   THROUGH X AND EACH OF THEM INCLUSIVE,

20            Defendants.

21   _____/

22

23        Defendants move to dismiss Plaintiffs' five causes of action

24   for failure to state a claim on which relief can be granted.

25   Plaintiffs oppose the motion.  The matter was heard on March 15,

26   2002.  Having considered all of the papers filed by the parties and

27   oral argument on the motion, the Court GRANTS the motion (Docket

28   #25).

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

BACKGROUND

On August 21, 1998 Defendants Yeo and Martini obtained a judgment against Plaintiff Stephen Turner in excess of $1,000,000. Complaint, Ex. A.  The judgment resulted from a jury verdict after trial in which Plaintiff Stephen Turner was found to have committed "various business interference torts" against Defendants Yeo and Martini.  Complaint ¶ 12.  Defendants Yeo and Martini hired Defendant Cook and his law firm Cook, Perkiss & Lew to assist in collection of the judgment.  Plaintiffs allege that the means used by Defendants to collect on the judgment violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq.,[1] the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 et. seq.  Plaintiffs also allege that Defendants' collection activities were undertaken with the intent to inflict emotional distress, and constituted an invasion of privacy.[2]

The alleged conduct that forms the basis of these claims is as follows.

On October 29, 1999, Defendants Yeo and Martini, represented by Defendant Cook, Perkiss & Lew, filed a complaint against Plaintiff Stephen Turner alleging that Turner had fraudulently conveyed his real and personal property with the intent to prevent

---

[1]Plaintiff Western Paramedical Services, LLC does not join in this cause of action.  Complaint ¶ 17.

[2]The cause of action for invasion of privacy is only alleged against Defendants Cook and Cook, Perkiss, & Lew.  Complaint ¶ 62.

2

**United States District Court**
For the Northern District of California

Yeo and Martini from collecting the money owed on the prior

judgment.  Complaint, Ex. I.

In their complaint, Yeo and Martini alleged that Plaintiff
Stephen Turner previously had been convicted of harassing Yeo and
Martini in violation of California Penal Code § 415.  <u>Id.</u> at 3.
Although the complaint sought to set aside the conveyance of a
property located in Alameda, California, the complaint was filed in
the Superior Court of California, County of Contra Costa.
<u>Id.</u> at 1.

Plaintiffs allege that Defendants' court filings in the Contra
Costa fraudulent conveyance action contained "false, deceptive and
improper statements."  Specifically, Plaintiff Stephen Turner
objects to references to his prior misdemeanor criminal conviction
and objects to a disparaging characterization of his family trust
suggesting it was created to assist him to hide his assets.
Complaint ¶ 41.

Plaintiffs allege that, in addition to filing the fraudulent
conveyance action, Defendants sent out hundreds of letters
informing third parties that Defendants Yeo and Martini obtained a
judgment and an order of assignment against Plaintiff Stephen
Turner.  Complaint, Ex. B.  The letters stated that "any monies
which you may owe to Dr. Turner, or any designee, nominee, or other
named entity, now constitute the property of [Yeo and Martini]."
<u>Id.</u>  Plaintiffs allege that these letters falsely stated that the
assignment order applied to Western Paramedical Services (WPS)
when, in fact, the judgment against Plaintiff Stephen Turner may
not be recouped from Plaintiff WPS.  Complaint ¶¶ 24, 27.

3

Plaintiffs allege that Defendants made these same false representations in telephone conversations with third parties who do business with Plaintiff Stephen Turner and/or Plaintiff WPS. <u>Id.</u> ¶ 31.

Plaintiffs also allege that Defendants engaged in other conduct to "harass, oppress or abuse" them.  This conduct included: serving excessive copies of court papers on Plaintiffs, Complaint ¶ 38; improperly serving Plaintiffs with documents intended for other parties, Complaint ¶ 39; making false statements in an August, 2001 court filing regarding the sale of Plaintiffs' residence, Complaint ¶ 43; stating to Plaintiff Stephen Turner, "You dirty Jew, I'll take everything away from you."  Complaint ¶ 37.

LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see also</u> <u>Fidelity Fin. Corp. v. Fed. Home Loan Bank of S.F.</u>, 792 F.2d 1432, 1435 (9th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1064 (1987).  All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.  <u>See</u> <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  <u>See</u> <u>Durning v.</u>

4

**United States District Court**
For the Northern District of California

First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), cert. denied, 484 U.S. 944 (1987).

Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. See id. at 296-97.

DISCUSSION

A. FDCPA, 15 U.S.C. § 1692

Plaintiffs contend that Defendants' efforts to collect the judgment owed by Plaintiff Stephen Turner exceeded the limitations imposed by the FDCPA. They allege that Defendants made "false deceptive or misleading representations" and used "unfair or unconscionable means to collect or attempt to collect any debt" in violation of 15 U.S.C. §§ 1692e, 1692f. Complaint ¶¶ 32, 35.

The prohibitions of sections 1692e and 1692f do not apply to

5

United States District Court
For the Northern District of California

all collection procedures.  Rather, the FDCPA regulates the collection of a specific type of debt defined in the statute.  The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes . . . ."  15 U.S.C. § 1692a(5).  As an initial matter, therefore, the Court must determine whether Plaintiff Stephen Turner's obligation to Defendants is a "debt" within the meaning of the statute.  If not, the prohibitions of the FDCPA do not apply to this action.  Slenk v. Transworld Systems, Inc., 236 F.3d 1072, 1075 (9th Cir. 2001) (threshold question in suit under FDCPA is whether the dispute involves a "consumer debt as that phrase is defined by the FDCPA").

In order to qualify as a debt within the meaning of the statute, the obligation must arise "out of a transaction" and the obligation must be incurred "primarily for personal, family, or household purposes."  Plaintiffs concede that the tort judgment entered against Plaintiff Stephen Turner is not a "debt" within the meaning of the act.  See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367 (11th Cir. 1998) (obligation arising from tort is not a transaction and tortfeasor is not a consumer within the meaning of the FDCPA).

Plaintiffs argue, however, that the action to set aside the fraudulent conveyance of Stephen Turner's property falls within the FDCPA because it is an action to recover a personal residence.  This fact does not convert Defendants' efforts to collect a tort

judgment into an effort to collect a consumer debt.  There is but one "debt" at issue here: a judgment in excess of $1,000,000 owed by Plaintiff Stephen Turner to Defendants Yeo and Martini. Defendants' actions were an effort to effectuate that judgment. The judgment, as noted, is not a consumer debt such that the proscriptions of the FDCPA would apply.

Because the FDCPA does not apply to actions taken to collect a tort judgment and because no additional allegations can convert the tort judgment at issue here into a consumer debt to which the FDCPA would apply, Plaintiffs' first claim for relief for violations of the Fair Debt Collection Practices Act is dismissed without leave to amend.

B.    RICO, 18 U.S.C. § 1961

To state a claim under RICO, Plaintiffs must allege a "pattern of racketeering activity."  18 U.S.C. § 1961.  A "pattern or racketeering activity" is a term of art meaning at least two acts of racketeering activity (predicate acts) within ten years of each other.[3]  Id. at § 1961(5).  The plaintiff must allege that these predicate acts are related (relatedness requirement), "and that they amount to or pose a threat of continued criminal activity" (continuity requirement).  H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original).

_____

[3]RICO defines racketeering activity as "any act or threat involving" specified State law crimes, any "act" indictable under various specified federal statutes, and certain federal "offenses" ("predicate acts").  18 U.S.C. § 1961(1).  Predicate acts include, inter alia, mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and "any offense involving . . . fraud in the sale of securities . . . "  18 U.S.C. § 1961 (1)(B) & (D).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

A plaintiff may satisfy the continuity requirement by alleging either "closed-ended" or "open-ended" continuity.  Closed-ended continuity involves "a series of related predicates extending over a substantial period of time." H.J., 492 U.S. at 242; see also Religious Technology Center v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992).  Open-ended continuity involves "a specific threat of repetition extending indefinitely into the future," or predicate acts that "are part of an ongoing entity's regular way of doing business." H.J., 492 U.S. at 242; Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 450 (9th Cir. 1991).

Where the predicate acts were designed to bring about a single event or injury to a single plaintiff, continuity is not sufficiently plead.  See, e.g., Medallion Television Enterprises, Inc. v. SelecTV of California, Inc., 833 F.2d 1360 (9th Cir. 1987), cert. denied, 492 U.S. 917 (1989) (two predicate acts aimed at fraudulent inducement to enter a contract); Religious Technology Center v. Wollersheim, 971 F.2d 364 (9th Cir. 1992) (only goal of defendants was successful prosecution of their State lawsuit); Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir. 1992) (defendants' acts served single purpose of impoverishing plaintiff).

In Sever, the plaintiff brought suit against his former employers alleging that the defendants had fired him, blacklisted him, and induced a subsequent employer to fire him after he wrote articles criticizing the defendants and testified before Congress to their economic detriment.  The plaintiff's RICO claim alleged that the defendants engaged in a pattern of racketeering activity

8

that damaged his ability to obtain employment.  The lower court
dismissed the plaintiff's fourth amended complaint for failure to
state a claim under RICO, on grounds, <u>inter alia</u>, that he had
failed to allege a pattern of racketeering.  978 F.2d at 1533.  The
Ninth Circuit affirmed, holding that the allegations did not
satisfy the continuity requirement set out in <u>H.J.</u>  The Ninth
Circuit specifically noted that there was no suggestion that the
defendants would have harmed any other Congressional witnesses or
that the alleged practices had become a regular way of conducting
business.  <u>Id.</u>

Similarly, in this case, Plaintiffs allege that "the many
letters and follow up telephone calls and faxes, constitute a
pattern of racketeering conduct."  Complaint ¶ 56.  However, the
sole alleged purpose of this conduct is to redirect to Defendants
sums owed to Plaintiff WPS in order to collect the outstanding
judgment owed by Plaintiff Stephen Turner.  <u>Id.</u> ¶ 52.  There is no
allegation of a continuing threat of unlawful activity once that
judgment is collected.  <u>See</u> <u>Religious Technology Center</u>, 971 F.2d
at 366 (because the goal of allegedly fraudulent activity was
prosecution of State court tort suit, "there was no threat of
activity continuing beyond the conclusion of that suit"); <u>Medallion</u>
<u>Television Enter.</u>, 833 F.2d at 1364 (where fraud was a joint
venture to obtain broadcast rights, once the rights were obtained
the threat ended).

In fact, just the opposite is alleged.  Plaintiffs
specifically note that the activity complained of was solely
directed towards collecting the judgment owed by Plaintiff Stephen

9

Turner.  <u>See</u> Complaint ¶ 57 (alleged racketeering activities were "motivated by a desire to collect on a judgment against Stephen Turner in favor of Yeo and Martini").  Consequently, the "continuity requirement" necessary to state a claim under RICO is not satisfied.[4]

Because Plaintiffs have not alleged conduct that satisfies the continuity requirement for a RICO claim, that claim is dismissed with leave to amend.  If Plaintiffs choose to file an Amended Complaint alleging a RICO violation, Plaintiffs, concurrent with their Amended Complaint, are ordered to file a RICO case statement in the format provided in the attached Order.

---

[4]In addition, for separate reasons, Plaintiffs have not stated a claim against Defendant Cook, Perkiss, & Lew under RICO.  "For the purposes of section 1962, RICO plaintiffs must allege a defendant--the "person" or "persons"--who is distinct from the "enterprise" whose business the defendant is conducting."  <u>Sever</u>, 978 F.2d at 1533.  Plaintiffs specifically plead that Defendant Cook, Perkiss, & Lew is the "enterprise that carried on these predicate acts."  Complaint ¶ 57.  Because one entity cannot be both the corrupt enterprise and the persons conducting that enterprise, the RICO claim against Defendant Cook, Perkiss & Lew must be dismissed.

Moreover, Plaintiffs Stephen Turner, Susanna Turner, and their minor children have no standing to pursue a RICO claim against Defendants.  Title 18 U.S.C. § 1964 confers standing on "any person injured in his business or property" by reason of a RICO violation.  According to the complaint, the allegedly fraudulent acts resulted in the misdirection to Defendants of monies owed to Plaintiff WPS.  Plaintiff Stephen Turner declares that his only connection to Plaintiff WPS is as an employee and former independent contractor.  Declaration of Stephen Turner ¶ 6.  Plaintiff Susanna Turner declares that she is a manager for Plaintiff WPS.  Declaration of Susanna Turner ¶ 1.  Plaintiffs contend that they have suffered a cognizable injury because "had these funds been paid over to Western Paramedical Services, LLC, they would have become available to pay wages and salaries over to Plaintiffs."  Complaint ¶ 58.  This speculative, indirect injury is not cognizable as a RICO injury.

United States District Court
For the Northern District of California

C.   State Law Claims

Plaintiffs also bring three causes of action pursuant to State law.   Title 28 U.S.C. § 1367(a) gives this Court supplemental jurisdiction over such claims.   Defendants contend that the conduct that forms the basis of Plaintiffs' complaint is privileged pursuant to California Civil Code § 47(b)(2) (litigation privilege) and, therefore, cannot form the basis of liability for either the common law or the statutory causes of action alleged.

In O'Keefe v. Kompa, 100 Cal. Rptr. 2d 602 (Ct. App. 2000), the California Court of Appeal applied the litigation privilege in a situation analogous to the one now before the Court.   In that case, the plaintiff had lost a prior suit against defendants and been ordered to pay the defendants attorneys' fees.   In an effort to collect the attorneys' fees, the defendants filed a levy on the plaintiff's bank account and engaged in other collection activities.   The plaintiff then sued the defendants based on these collection efforts.

The court applied a four part test to see if the conduct at issue was subject to the litigation privilege.   "To be privileged a statement must (1) be made in a judicial proceeding, (2) by litigants or other authorized participants, (3) aim to achieve the litigation's objects, and (4) have some logical connection or relation to the proceeding."   Id. at 604-05 (citing Silberg v. Anderson, 266 Cal. Rptr. 638 (1990)).   "Further, [the litigation privilege] applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the

11

courtroom and no function of the court or its officers is involved." Silberg, 266 Cal. Rptr. at 642 (citations omitted).  In O'Keefe, the court concluded that section 47(b)(2) applied to the defendants' collection activities and dismissed the complaint.

Plaintiffs here raise three arguments as to why the conduct and statements of Defendants do not fall within the litigation privilege.  First, Plaintiffs argue that the statements included by Defendants in letters to third parties were knowingly false.  Plaintiffs contend that the making of knowingly false representations in this context amounts to obstruction of justice and attorney deceit and that such conduct is not subject to the litigation privilege.  In support of this proposition, Plaintiffs rely on Carney v. Rotkin, Schmerin & McIntyre, 206 Cal. App. 3d 1513 (1988).[5]  In that case, the court held that an attorney's false statement to an opposing party that a bench warrant had been issued for her arrest was not privileged because the statement as alleged was proscribed by the Code of Professional Conduct.  The court concluded that this unethical conduct was not intended to achieve the litigation's objectives and therefore did not satisfy the third criteria for a privileged statement.  Id. at 1520.

However, subsequent to the California Court of Appeals decision in Carney, the California Supreme Court decided Silberg, supra.  In Silberg, the court reaffirmed that the litigation

_____

[5]Plaintiffs also rely on Kinnamon v. Staitman & Snyder, 66 Cal. App. 3d 893 (1977) and Barbary Coast Furniture v. Sjolie, 167 Cal. App. 3d 319 (1985).  Both of these cases were explicitly overruled by the California Supreme Court.  See Silberg, 266 Cal. Rptr. at 646.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

privilege should be construed broadly to protect statements associated with an ongoing judicial proceeding.  The court specifically noted that attorney liability for fraudulent communications, perjured testimony, and abuse of process were all precluded by the litigation privilege.  266 Cal. Rptr. at 646; O'Keefe, 100 Cal. Rptr. 2d at 604-05.  Each of these torts requires allegations of unethical or criminal conduct, yet the court found that such allegations were not a bar to satisfaction of the four part test noted above.  Therefore, the litigation privilege applies equally to malicious or fraudulent conduct and statements.  Plaintiffs' argument that the litigation privilege does not apply where unethical conduct is alleged is therefore contrary to controlling authority from the California Supreme Court and must be rejected.

Plaintiffs next argue that statements to third parties not involved in the litigation are not privileged.  Plaintiffs rely on Susan A. v. County of Sonoma, 3 Cal. Rptr. 2d 27 (Ct. App. 1991) for this proposition.  The Susan A. court held that statements to the press were not privileged because the communications were made "to persons in no way connected with the proceeding."  3 Cal. Rptr. at 31.  In O'Keefe, by contrast, the court held that levying on a bank account was "clearly privileged" because that effort was "an extension of [the] judicial process."  100 Cal. Rptr. 2d at 605. In this case, the letters sent to third parties notifying them of the order of assignment against Stephen Turner were privileged because those letters were an attempt to enforce a prior judgment and, therefore, an extension of that process.  "We conclude that

13

defendants' actions were logically and legally related to the realization of a litigation objective--that is, collection of a judgment." Id.

Lastly, Plaintiffs argue that Defendants acted outside the litigation privilege when they attached a police report involving Plaintiff Stephen Turner to their fraudulent conveyance complaint. Plaintiffs rely on Nqyen v. Proton Technology Corp., 81 Cal. Rptr. 2d 392 (Ct. App. 1999), where the California Court of Appeal held that a demand letter's reference to appellant's criminal record was outside the litigation privilege. In Nqyen, the court noted that the connection between appellant's criminal record and the substance of the instant litigation was "to be charitable about it, tenuous." 81 Cal. Rptr. 2d at 398. Here, however, Plaintiff Stephen Turner's criminal record is directly related to the action which resulted in the judgment against him and, consequently, relevant to the attempts to collect the judgment through the fraudulent conveyance action.

The parties have a long and contentious history. Defendants contend that in 1995, prior to the civil litigation that resulted in the $1,000,000 judgment, Plaintiff Stephen Turner harassed Defendants Yeo and Martini and that this harassment led to criminal proceedings against Dr. Turner. In their fraudulent conveyance complaint, Defendants included this fact to show the length and severity of the enmity between the parties, and Dr. Turner's motivation to hide his assets. The police report "had some logical connection to the proceeding" and is therefore privileged. O'Keefe, 100 Cal. Rptr. 2d at 605.

14

**United States District Court**
For the Northern District of California

Because the conduct at issue is privileged, Defendants cannot be held liable on any of Plaintiffs' State law claims, including their third claim for relief for unfair business practices. See Cal. Bus. & Prof. Code § 17200; <u>Rubin v. Green</u>, 847 P.2d 1044, 1053 (Cal. 1993) ("To permit the same communicative acts [that are immune from civil tort liability pursuant to section 47(b)] to be the subject of an injunctive relief proceeding brought by this same plaintiff under the unfair competition statute undermines that immunity.").

The statement alleged to have been made by Defendant Cook to Plaintiff Stephen Turner ("you dirty jew, I'll take everything away from you") is not privileged.  However, this statement is not relevant to either the invasion of privacy or the unfair competition claims, which are based on other alleged conduct.  The statement, alone, is not sufficient to state a claim for intentional infliction of emotional distress.  To state such a claim, the conduct at issue "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." <u>Trerice v. Blue Cross of California</u>, 257 Cal. Rptr. 338, 340 (Cal. 1989).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED (Docket #25).  The debt in question here is not subject to the FDCPA, Plaintiffs have failed to plead predicate acts that may form the basis of a RICO cause of action, and Defendants are immune from liability on Plaintiffs' State law causes of action pursuant to California Civil Code § 47(b)(2).

The Court grants Plaintiffs leave to file an amended complaint

15

in which, consistent with the requirements of Rule 11, they may state a RICO claim, alleging conduct by Defendants that satisfies RICO's continuity requirement.[6]  If Plaintiffs file an amended complaint alleging a RICO claim, they must also file a RICO statement, as described in the Order Requiring Filing of Rico Statement filed today.

They may also re-allege their supplemental State law claims, if they can do so without alleging conduct that is subject to the litigation privilege.  The amended complaint must be filed within thirty days of the date of this order.  If it is not, this case will be dismissed without prejudice to refiling the State claims in State court.

Dated:   3/22/02

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

---

[6]Plaintiffs object to Defendants' request for judicial notice of the judgment of the California Superior Court in The Travelers Ins. Co. v. Ah Beng Yeo and E.A. Martini, Western Paramedical Services, LLC., No. C00-04505.  In granting Defendants' motion to dismiss, the Court did not rely on this document.  Therefore, Plaintiffs' objection is denied as moot (Docket #33).

16